In the Matter of PRIOR AVIATION SERVICE, INC., Respondent, *v.* BOARD OF ASSESSORS OF THE TOWN OF CHEEKTOWAGA et al., Appellants, and CHEEKTOWAGA-MARYVALE UNION FREE SCHOOL DISTRICT, Intervenor-Appellant.

Fourth Department, December 12, 1974.

*John V. Rogowski* (*Stephen H. Kelly* of counsel), for appellants.

*Hodgson, Russ, Andrews, Woods & Goodyear* (*Stephen H. Kelly* and *Michael J. Hutter* of counsel), for intervenor-appellant.

*Robert J. Stein* for respondent.

WITMER, J. P. The Town of Cheektowaga (Town), through its Board of Assessors and Board of Assessment Review, and the Cheektowaga-Maryvale Union Free School District (School) appeal from the judgment of the Supreme Court, Special Term, in Erie County determining that certain buildings of petitioner corporation are exempt from taxation and directing that appellants' assessment rolls be so marked for future years.

The buildings in question were erected on airport land which was formerly owned by the City of Buffalo. While so owned, the city entered into an agreement on June 6, 1952 with the Town and School whereby the real estate was exempted from taxation for 20 years, until June 30, 1972 for the School and until December 31, 1972 for the Town. The agreement specified that " improvements made to or erected on said aviation field during

the existence of this agreement or any facilities installed or erected during the existence of this agreement to meet the needs of scheduled and non-scheduled air transportation * * * will be exempted ". The agreement further provided that if any building were erected "for the occupation and use by a private person, firm * * * or corporations and from which building or addition * * * the City will derive revenue * * * [it] shall not be exempted." It was also provided as a limitation of the latter clause that, "it being the intent of the parties hereto that the construction of any new Administration Building by the party of the first part will nevertheless be exempted from the payment of taxes * * * during the existence of this agreement without regard as to whether or not the City will derive revenue from leasing portions of said Administration Building ". In part consideration for the agreement the city agreed to pay in lieu of taxes the sum of $15,000 to the Town annually on February 15 through February 15, 1972, and to pay $35,000 to the School annually on October 15 through October 15, 1971. It was provided that if the city conveyed away the land, it would be released from the obligations to pay, but the agreement would otherwise continue in effect and the grantee would assume the obligations to make the payments in lieu of taxes.

In 1957 and in 1969 the City of Buffalo conveyed the airport to Niagara Frontier Port (and Transportation) Authority (Niagara) subject to the above agreement. Subdivision 1 of section 1299-c of the Public Authorities Law provides that, "there is hereby created the 'Niagara Frontier transportation authority'. The authority shall be a body corporate and politic constituting a public benefit corporation." Section 1299-o of that law provides that the real property of Niagara shall be tax exempt. In November, 1969 Niagara leased part of this airport land to petitioner for a period of 20 years, which then built buildings and facilities thereon which it uses in connection with the airport operation. These are not part of the Administration Building referred to in the agreement. Petitioner owns these buildings apart from the leased land. Petitioner's business consists of providing fuel service, caterer service and other types of service to all airlines which use the airport and wish petitioner's services; and it also performs mail service.

For the tax year of 1972–1973 the Town placed an assessment on these buildings in the sum of $60,000. Petitioner brought this proceeding to vacate the tax levied upon the assessment, claiming that under the agreement the buildings are exempt from taxa-

tion (presumably so long as the annual payments of $15,000 and $35,000 are made by Niagara). Alternatively, petitioner sought a downward adjustment of the assessment on the ground that it was unequal compared with assessments upon its competitors similarly situated.

The Town and School, appellants, contend that: (1) the agreement only exempts buildings owned by Niagara and (2) in no event can the court declare the property exempt from taxes for future years. It is acknowledged that the tax assessment date each year was June 1. Appellants further assert that even if the agreement were held to entitle petitioners to an exemption during the 20 years of the lease of June 6, 1952, that would only give petitioner an exemption with respect to the taxes for 1972 and none thereafter.

We start with the proposition that the fact that the land upon which petitioner erected these buildings is tax exempt does not relieve it in any way from liability to pay taxes on the buildings which it owns and which appellants have assessed (*Matter of National Cold Stor. Co.* v. *Boyland,* 16 A D 2d 267, affd. 12 N Y. 2d 808). It is also fundamental tax law that, '' all real property within the state shall be subject to real property taxation * * * unless exempt therefrom by law '' (Real Property Tax Law, § 300; *Matter of City of Lackawanna* v. *State Bd. of Equalization & Assessment of State of N. Y.,* 16 N Y 2d 222, 230; 16 McQuillin, Municipal Corporations [2d ed.], §§ 44.42, 44.63; 44.66; 44.67; 44.71).

Petitioner contends that these buildings are exempt from taxation by reason of the contract of June 6, 1952 between the City of Buffalo and appellants, the benefits of which have devolved upon Niagara by virtue of the conveyance by the City to Niagara, as well as the fact that the real property of Niagara is also exempt from taxation by virtue of section 1299–o of the Public Authorities Law and section 412 of the Real Property Tax Law. The argument is that since the owner, Niagara, is exempt from taxation with respect to this real estate and its improvements thereon, so is petitioner.

The statute (Public Authorities Law, § 1299–o) and the agreement of June 6, 1952 contemplate exemptions to a public benefit corporation owner, a nonprofit company, while using the property for the general public good. Improvements thereon by a private corporation operated for profit, however, are not within the ambit of the statute or the agreement. The statute exempting property from taxation must be strictly construed (*People* v. *Brooklyn Garden Apts.,* 283 N. Y. 373, 380; *City of*

*Rochester* v. *Union Free School Dist. No. 4 of Town of Livonia,* 255 App. Div. 96, 98, affd. 280 N. Y. 531; 58 N. Y. Jur., Taxation, § 60; 16 McQuillin, Municipal Corporations [2d ed.], §§ 44.63, 44.67, *supra*), and the intention to grant immunity must be clear beyond a reasonable doubt (*Young Women's Christian Assn. of City of N. Y.* v. *City of New York,* 217 App. Div. 406, 408, affd. 245 N. Y. 562). So construed, the language of the statute (Public Authorities Law, § 1299-o) that the exempt authority (Niagara) will be operating "for the benefit of the people of the state * * * performing an essential governmental function" shows that the exemptions are intended to be limited to Niagara itself and are not intended to benefit a private lessee corporation operated for profit (*Matter of Fort Hamilton Manor* v. *Boyland,* 4 N Y 2d 192, 198; *Matter of National Cold Stor. Co.* v. *Boyland,* 16 A D 2d 267, affd. 12 N Y 2d 808, *supra*).

The contract upon which petitioner relies for exemption must also be "narrowly and strictly" construed, just as must the statute, with respect to tax exemption (*Rapid Tr. Corp.* v. *New York,* 303 U. S. 573, 590–591, affg. 275 N. Y. 258). The contract had reference to exempting from taxation buildings *owned* by the city, and this later became applicable to buildings owned by Niagara, a tax-exempt corporation. Such exemption cannot properly be extended to permit exemption of property owned by a private corporation operated for its profit. This was obviously the intent of appellants when they made the contract, for in the second sentence of the second paragraph thereof it was expressly provided that it would not apply to buildings erected for use by a private person or corporation from which the tax-exempt corporation, lessor, will derive revenue, except with respect to the Administration Building, which is not involved herein.

Thus, it must be held that Special Term was in error in granting the petition for exemption of petitioner from the 1972 assessment and taxes on its buildings.

The further provision in the judgment determining that the property shall be exempt from payment of any and all taxes or assessments in the future is erroneous for the reasons above assigned and also because the court should not have ruled on the question with respect to future years (see *People ex rel. Watchtower Bible & Tract Soc.* v. *Haring,* 286 App. Div. 676, 680). No one can foresee who will own the property and the use to which it will be put in future years, which may, of course, become vastly different from that existing at the time of the 1952 agreement or at the time of Special Term's decision, and

so in no event was it proper to grant perpetual tax exempt status to it.

For the above reasons the judgment should be reversed, without prejudice to the right of petitioner, if it be so advised, to pursue that aspect of the petition wherein it asserts that the assessment is excessive and unequal.

MOULE, CARDAMONE, MAHONEY and DEL VECCHIO, JJ., concur.

Judgment unanimously reversed on the law with costs and matter remitted to Special Term, Erie County, without prejudice to petitioner, if so advised, pursuing its allegations in the petition that the assessment is excessive and unequal.